


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
FILED
Feb 22 2022
ARTHUR JOHNSTON, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STEPHANIA COLEMAN                                                                          PLAINTIFF

vs.                                                    CIVIL ACTION NO. 3:21-CV-168-DPJ-FKB

OFFICE OF THE STATE AUDITOR                                                      DEFENDANT

### PLAINTIFF'S SUPPLEMENTAL PLEADING

Plaintiff, Stephania Coleman, of Jackson, Mississippi, pursuant to Civil Rules of Civil Procedure, Rule 15(d) request this Court consider the Supplemental Pleadings of events occurring after the original complaint was filed March 4, 2021, on Defendant (agents or employees), Office of the State Auditor. Plaintiff filed this case as Pro Se.

### I.   NATURE OF THE ACTION

1. This is an action for relief from employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

2. Plaintiff, Stephania Coleman, alleges the Defendant (Shad White) unlawfully discriminated against her on the basis of race, (Black). Plaintiff was harassed, denied promotions and advancements, and denied transfers. Plaintiff endured retaliations in a hostile work environment with Defendant while employed. Deceitful work practices were endured by Plaintiff before and after employment. Plaintiff believes there was retaliation, before and after, due to the complaints filed against the Defendant (agents or employees).

3. Defendant continues to falsify and exaggerate statements the against Plaintiff, and has placed documents in and on Plaintiff's personnel file without knowledge or communications.

Plaintiff endured intimidation, bullying, write-ups without counseling, warnings, and corrective actions by the Defendant and deceptive business practices that are prohibited in the Mississippi State Employee Handbook (MSEH) and federal law. After the original complaint filed by Plaintiff, further retaliation continued from Defendant as follows: 1) Defendant terminated Plaintiff from employment on July 2, 2021; 2) Defendant blocked/banned Plaintiff from obtaining state jobs from Defendant's termination letter; 3) Plaintiff was denied re-instatement (by inter-agency transfer, or intra-agency transfer) of employment through state process with Mississippi Employee Appeals Board (MEAB); and 4) Plaintiff was denied unemployment benefits.

4. Plaintiff has proof of Defendant (agents or employees) on social media with other state agency employees, as well as private industry companies where Plaintiff has tried to obtain employment. Plaintiff has been stripped and starved out from her livelihood through state means of surviving in the state of Mississippi and in state government.

5. Plaintiff alleges the Defendant denied Plaintiff equal rights based on her race, Black.

6. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, and reasonable court costs for Defendant's violations of Plaintiff's rights.

## II.   THE PARTIES

7. Plaintiff, Stephania Coleman, was born in Jackson, Mississippi. Plaintiff is educated and an English-speaking African American. Plaintiff worked as an Auditor Analyst II, from approximately August 1, 2018 to July 2, 2021. Plaintiff received her education from Mississippi College, then in Texas. Plaintiff is finishing a second Bachelor's degree in Mississippi. Plaintiff have certification designations as a – Certified Fraud Examiner (CFE) and Certified Internal Controls Auditor (CICA). Plaintiff moved back to Mississippi to assist

2

her elderly parent, and earn a living bringing back knowledge and skills to benefit the state of Mississippi employers in government and/or private industry. Plaintiff exhibited skills and recovered hundreds of thousands of dollars owed to the state of Mississippi while employed with Defendant in 2019 and 2020. Plaintiff's two audit reports are published on Defendant's agency website under the name of Defendant (agents or employees). Plaintiff has a witness from the previous deputy director who assigned audit projects to Plaintiff with documented email communications of assigned audit projects to (management or) Defendant.

8. Upon information and belief, the Defendant is a state government agency known as Office of the State Auditor (aka State Audit Department, State Auditor's Office or OSA) in the state of Mississippi that audits and reports fraud, waste, and abuse in the state of Mississippi.

9. The Defendant employs around 150 employees, including approximately 40 Certified Public Accountants, making it one of the largest auditing firms in the state of Mississippi. Defendant and employees were therefore an "employer" within the meaning of Title VII.

10. Defendant is liable for the acts of the agents and employees employed in this state government agency in Jackson, Mississippi set forth below.

11. Plaintiff informed and believe and allege that at all times relevant, the Defendant was responsible, in some manner, for the occurrences and injuries alleged in this complaint and supplemental pleading. Plaintiff asks this Court to consider this supplemental pleading due to actions, occurrences, and events that have occurred after the original compliant pursuant to Civil Procedures Rule 15(d).

### III. JURISDICTION AND VENUE

12. This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S. C. §1331, as this case involves questions of federal law.

13. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share all common operative facts with their federal law claims and the state and federal claims are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interest of judicial economy, convenience, consistency, and fairness to the party involved in this case.

14. The venue is proper in, and the Defendant is subject to the personal jurisdiction of, this Court because the Defendant maintain the facility and business operations in this District, and all of the events leading up to this action occurred in this District.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 1, 2020 against Office of the State Auditor in Jackson, Mississippi. EEOC issued Plaintiff a Notice of Right to Sue in January 2021. Plaintiff has also filed with the Mississippi Employee Appeals Board (MEAB) in an attempt for job re-instatement in a state agency. MEAB was informed of the pending federal case, but denied Plaintiff job re-instatement to any state government agency. Mississippi Department of Employment Security (MDES) was also informed of the pending federal case, but denied Plaintiff unemployment benefits and temporary work assignments to earn a living.

16. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit on employment discrimination against the Defendant.

### V. FACTUAL ALLEGATIONS

17. At all times material to this action, Plaintiff, Stephania Coleman, was employed by Defendant as Auditor Analyst II in Jackson, Mississippi. Defendant and Plaintiff started work on

the same day. In 2018, there were very few Certified Fraud Examiner (CFE) certifications in the agency. The Defendant was an attorney, not a CFE. Now Defendant is a CFE.

18. As part of Plaintiffs' job, Plaintiff was responsible for communicating with the public on special audit projects, and also to county officials to ensure efficient and effective operations for state programs were accountable, ethical and compliant with the Mississippi Code (laws) for public transparency. Plaintiff's two large audit projects and work was published by the Defendant on the Defendant's agency website in September 2019 and July 2020 (assigned by previous manager, Brandie Branch, Performance Audit Deputy Director and Supervisor). Plaintiff also assisted co-workers on audit projects in 2019 and 2020, as directed under the previous manager. Plaintiff had no issues with Defendant and the agency before July 2019 and with prior management on both audit assignments. Brandie Branch left the agency June 28, 2019. New managers took over in July 2019. Starting in October into December 2019, write-ups without counseling, warnings or corrective actions, intimidation, bullying, retaliation and disparate treatment began against the Plaintiff with the new managers in the Performance Audit Division, now known as Government Accountability Division.

19. Defendant's new management brought Plaintiff's coworker in on a personnel (Human Resources) issue to intimidate the Plaintiff. Mark Johnson, a Technical Assistance attorney, on another floor in July 2019 was brought into a personnel matter. Mr. Johnson worked on another floor and division, not Human Resources. This was a breach of confidentiality. Defendants (agent and employees) discussed Plaintiff's personnel issues with Plaintiffs' peers/co-workers documented by emails – another violation. The Defendant had never introduced Mark Johnson as a part of the Human Resources Division through email or agency communication. This was Defendants' attempt to intimidate and bully Plaintiff with legal tactics and by an attorney from

5

the Technical Assistance Division, not a part of the Human Resources Division per the Mississippi state handbook. In January 2020, MS State Employee Handbook added that unless an employee has been "designated" in the Human Resources Division, an agency cannot discuss personnel issues with another employee. This is a breach of confidentiality. Defendant shared personnel issues with other state employees to bully, intimidate and discredit the Plaintiff. The Defendant never communicated by email that Mr. Johnson was part of Human Resources. Plaintiff has over 20 years of state government service combined, Texas and Mississippi. Plaintiff has never seen a state government agency employee assigned and working in two or more divisions simultaneously.

20. Mark Johnson, Technical Assistance attorney, was also in the September 27, 2021, MEAB job re-instatement hearing sitting across the table from the Plaintiff. Emailed documents included Mark Johnson's name, division and contact information in the Technical Assistance Division, not the Human Resources Division. This was a breach of confidentiality. Defendant continues deceptive business practices and ignored the Mississippi State Employee Handbook (state policy and procedures) from the Mississippi State Personnel Board (MSPB). State or federal laws did not seem to apply to this state agency, and were ignored.

21. On Friday, July 2, 2021, around 2:00 p.m., Defendant terminated the Plaintiffs' employment due to "inefficiency of good cause". Defendant claims Plaintiff did not follow management directives, broke the chain of command, and was inefficient in the 2-page termination letter.

Defendant says Plaintiff was inefficient, but Defendant displays Plaintiffs two audit reports on the agency website: (2019) Mississippi Blues Commission and (2020) County Court Assessments. Defendant says Plaintiff broke the chain of command, but the Defendant did not follow the chain of command and skipped Mr. William "Bill" Pope as Chief of Staff, having

6

sign-offs on Plaintiff's disciplinary actions by Patrick Dendy, Deputy Auditor and CPA. Mr. Dendy was named in the EEOC complaints, and he was named in this federal lawsuit until November 5, 2021. Mr. Dendy provided Plaintiff letter of three-day suspension of pay and leave during EEOC filing in July 2020 for Plaintiff "not completing an assignment – Stone County." When Plaintiff returned, Defendant (agents or employees) asked Plaintiff by email to assist the Investigations Division (Layne Bounds, Investigator) with Stone County. This project is still open with the Defendant. Stone County was no longer an audit matter, but an investigative matter.

This Court removed Patrick Dendy as an individual defendant named in this federal case. Defendant (agents or employees) continues to refer to Plaintiff as "inefficient" when Defendant (agents or employees) would not assign work to Plaintiff, left Plaintiff out of group division assignments, and rarely provided feedback in the months leading up to Plaintiff's termination. Plaintiff has work experience, knowledge, skills, abilities, and certifications new to the agency. In 2018, there were very few Certified Fraud Examiner (CFE) certifications in the agency. The Defendant and the Performance Audit Division director now hold the CFE certification. The Defendant (agents or employees) referred to Plaintiff as being "ignorant" documented as Exhibit #4 in MEAB job re-instatement hearing on September 27, 2021.

Plaintiff moved back to Mississippi as a CFE in 2018 from Texas. The previous deputy director/supervisor (Brandie Branch) of Plaintiff left the agency as a CFE in 2019. Defendant (Shad White) became a CFE in 2020. The new manager, now director (Jessica McKenzie-Kelly) is a CFE now as well in 2021, and after name removed on November 5, 2021, from this federal lawsuit. Out of all of the certifications for the Defendant (agents or employees) to obtain – the agency now has CFE's. Plaintiff seemed to have been an influence on the Defendant (agents or

7

employees), not "inefficient, egregious, or ignorant" described by Defendant (agents or employees).

22. Plaintiff informed and believe the Defendant, from the termination letter dated July 2, 2021, has negatively blocked and banned Plaintiff from obtaining state employment due to Defendant's close personal associations with other agencies and firms found on social media websites.

23. Plaintiff has applied to over 50 jobs on the Mississippi State Personnel Board (MSPB) website since July 2021, and have gone on four interviews with invitations, but never obtaining employment. Plaintiff believes agencies were teasing her with employment opportunities, but due to Defendant associations never intending to hire Plaintiff. Employers never asked why Plaintiff was no longer with the Defendant. Plaintiff felt uneasy and uncomfortable based on her termination letter stating "you [Plaintiff] are not permitted to enter *any* agency facility." Defendant issued Plaintiff a termination letter dated July 2, 2021. Page 2 of termination letter, last sentence states: "Without prior approval of this office you are not permitted to enter *any* agency facility." Plaintiff seems to have been blocked and banned from state jobs in Mississippi due to Defendants (agents or employees) associations. Since termination date, July 2, 2021, Plaintiff has tried to gain employment at local banks and state hospitals. Plaintiff applied for Accountant I or Investigator I positions at banks, and was denied with CFE certification. Plaintiff has applied at local hospitals for Accountant or Accounts Payable Clerk I and II, and was denied. Plaintiff has 24 accounting hours and is a CPA Candidate in Texas.

Defendant has history of intimidation and deception of state agency employees documented in the Clarion Ledger newspaper in Mississippi since March 7, 2016.

24. Plaintiff has received two interviews from MS Department of Medicaid (DOM) from Mississippi State Personnel Board recently. [Plaintiff is still unemployed from full-time state government employment six months later, and without unemployment benefits]. The first interview referred by the MSPB on November 4, 2021, posting closed August 27, 2021 - Performance Auditor IV interview, Plaintiff waited 1 hour and 14 minutes due to a previous applicant. DOM apologized. Plaintiff stayed for interview, and did not leave. No word on position filled five months later. The position was filled by Plaintiff's former coworker employed with Defendant. Plaintiff had more years of audit experience and certifications than the selected applicant. The second DOM interview referred by MSPB on December 13, 2021 – Accountant/Auditor II interview, Plaintiff was told to leave the interview if a problem with the 50-75% travel not advertised on the posting. Human Resources interviewer, Louanne Holman, told Plaintiff the position requires 75% travel, but this information was not on the job posting. Plaintiff was also told DOM has high turnover with laughter. The three interviewers were going to retire soon, and all were not traveling now due to the high COVID numbers in Mississippi. Plaintiff is referred by MSPB, then teased with state jobs, and have not gain employment.

25. DOM managers met Plaintiff in June 2021 to discuss the Performance Auditor IV position (it was not yet posted). DOM managers told Plaintiff they "had breakfast and knew Defendant" (employee and individual removed by this Court on November 5, 2021, Steve Wimberley, CPA). Steve Wimberley worked for DOM at one time. On November 5, 2021, this Court removed Defendants' individual employees (Jessica McKenzie-Kelly, Steve Wimberley, and Patrick Dendy, CPA, CIA) stating this case is to "proceed only against the State Auditor's Office."

26. From the termination date, July 2, 2021, the Plaintiff had 15 days to appeal the Defendants' decision with the Mississippi Employees Appeals Board (MEAB). The Plaintiff filed documents

9


with MEAB on July 5, 2021 to get re-instated on job. Plaintiff appealed with MEAB, and was denied re-instatement on November 8, 2021. This was the same day, this Court commanded MDES to provide Plaintiff recording of Defendants' (employee, Human Resources Director, MarQuaita Williams Lampkin) laughing at Plaintiff during the recorded unemployment hearing regarding: 1) Plaintiff being blocked and banned from state jobs; and 2) Six plus Caucasians (Whites) being promoted, advanced and transferred in the agency since 2018. Defendants' (employee, HR Director) behavior was unprofessional. Defendants' laughter was to intimidate and demean my unemployment status - a history of intimidation with this state agency. Defendants state in agency documents the Plaintiff, was "egregious". Defendants' behavior in the October 5, 2021, in MDES phone hearing was "egregious". The black hearing officer, Stacey Horton, did nothing about the Defendant's laughter. MDES would not release recording to Plaintiffs' regarding her unemployment hearing without a subpoena. This Court granted a subpoena to Plaintiff on October 29, 2021. The MDES recording arrived late to Plaintiff, per this Court's order. Plaintiff received on November 8, 2021, not November 5, 2021. MEAB decision sent by email to Plaintiff on November 8, 2021.

27. Plaintiff, the appellant or appealing party, attended an in-person MEAB hearing on September 27, 2021, at 9:30 a.m. at 210 East Capitol Street, Jackson, Mississippi 39201. Plaintiff asked for recording from September 27, 2021, and purchased recording from MEAB. Defendant (agents or employees) had four witnesses who attended the MEAB hearing with five exhibits. The Caucasian/White hearing officer, Amanda Smith, listened to both sides. [There was no laughter during this hearing]. Defendant referred to Plaintiff in Exhibit #4, page 1, as being "ignorant". Defendant (agents or employees) continued name calling to Plaintiff even after job termination. End of the hearing, parties were asked to provide a summary of hearing by October

12, 2021, close of business. On October 12, 2021, both parties submitted summaries. On October 13, 2021, Defendant (agents or employees) issued a Motion to Strike parts or all of the Plaintiff's summary. The hearing officer stated there may be a phone conference on Motion to Strike. No hearing or phone conference occurred on the Motion to Strike at MEAB.

28. According to Mississippi State Employee Handbook (MSEH), "a party appealing shall have the burden of proof..." See MSEH 9.18 (A-H). Plaintiff was the appellant. Additionally, "The Appellant.... Was subjected to alleged violations that included workplace reprisals, retaliation and adverse personnel actions by the Responding Party [Defendant] as defined in §25-9-171 through §25-9-177." MSEH §9.18(G)(i)(ii). Plaintiff's proof was removed from MEAB state government process. Plaintiff was ignored by MEAB when asked what was stricken.

29. Plaintiff applied for jobs with MDES, the unemployment office. Three jobs were posted on the MS State Personnel Board for MDES. Plaintiff never received calls for interviews. Professional Staffing, a temporary agency, in Flowood, MS, sent Plaintiff's resume on October 6, 2021, to MDES stating a "I am a great fit" for an accounting job paying over $50k. MDES never called Plaintiff for an interview. [Plaintiff's former salary was $55,247.02]. Plaintiff attempted to work for the MDES. The Mississippi unemployment office did not want to hire the Plaintiff. To date there has been no calls for employment to Plaintiff.

On November 4, 2021, Plaintiff spoke with Wanda Bell, MDES Legal Department who stated, "MDES was busy and had not gotten around to applications." Ms. Bell also received the subpoena from this Court, and mailed documents, both times (the wrong documents for Stephanie Coleman in Forest, MS on November 4, 2021; then the correct documents for Plaintiff, Stephania Coleman in Jackson, MS on November 8, 2021).

This Court granted Plaintiff a subpoena to MS Department of Employment Security (MDES), Legal Department, to deliver October 5, 2021, recording on Stephania Coleman to be delivered by November 5, 2021. MDES mailed Stephanie Coleman in Forest, MS recording and personal information (wrong person). Plaintiff did not receive the correct recording and documents until the following Monday, November 8, 2021, the same day as the MEAB decision.

30. On November 8, 2021, MEAB made their decision regarding Plaintiff. MEAB was not going to re-instated Plaintiff in a state agency. Plaintiff received a document from MEAB of certain items stricken from the summary, but Plaintiff was ignored when asked: 1) Why was there not a hearing on the Motion to Strike? and 2) What was stricken from the Motion to Strike from Plaintiffs' summary? The decision was final from MEAB. There was no other process for the Plaintiff at MEAB. MEAB was advised about the Defendant and pending litigation. This case was ignored by MEAB.

31. Plaintiff found the Defendant (employee, Human Resources Director, MarQuaita Williams Lampkin) and the MEAB Director, Monique Montgomery, had personal associations outside of the agencies and on social media (Facebook friends). Documents and information were sent from Plaintiff and Defendant, then processed by the MEAB Director, Monique Montgomery.

32. Plaintiff made attempts to regain full-time employment, the salary and lifestyle the Plaintiff was use to for the past three years, but the Mississippi state process with MEAB denied re-instatement on November 8, 2021, and stood by the Defendants decision to terminate the Plaintiff. Defendant had the authority to execute an inter-agency transfer and transfer the Plaintiff in another agency. Email from Defendant (employee, Performance Manager, Jessica McKenzie-Kelly) to Plaintiff says Plaintiff's "2020 Performance Evaluations was subjective."

33. Defendants' employee, Jessica McKenzie-Kelly, White female, in the Performance Audit Division, was the new manager (now director – promoted within 1 year) to Plaintiff beginning from July 2019 to March 2020. Ms. McKenzie (Kelly), White female, was promoted and advanced to director in Performance Audit Division in April 2020. After almost three years with Defendant, Plaintiff could not get promoted, could not advance, and was denied transfers. Plaintiff, a black educated female, was fired in 2021. Defendant (agents or employees) referred to Plaintiff as a threat in agency documents. The Defendant never called the police, nor had police reports on the Plaintiff in three years working for the Defendant. The threat for the Defendant (agents or employees) was the Plaintiff's education as a black woman with the knowledge, skills and certifications to advance in the agency. Plaintiff's work experience includes over 20 years of state government service, several years of federal government service, and private industry jobs.

34. In Plaintiff's EEOC complaint, a Caucasian/White male, Michael Piazza, came into the agency, the Performance Audit Division in January 2020. In late 2020 or early 2021, Mr. Piazza has transferred from the Performance Audit Division to the Executive Office. Plaintiff, black female, was hired August 1, 2018, but denied inter-agency or intra-agency transfers by the Defendant. Plaintiff experienced disparate treatment, deceptive work practices, wrongfully terminated, and retaliation from the Defendant (agent and employees) due to her race, black. This treatment has continued after termination of employment by Defendant (agent and employees).

35. Plaintiff attempted to file with the Mississippi Department of Employment Security (MDES) to obtain unemployment benefits. Defendant stated Plaintiff was fired for misconduct. Plaintiff appealed several times to MDES. Plaintiff had a phone conference with MDES hearing officer

and Defendant (Human Resources Director, employee, MarQuaita Williams Lampkin) on Tuesday, October 5, 2021, around 3 p.m. Plaintiff asked for recording. MDES requested a subpoena from the Plaintiff in this case. Hinds County Circuit Court judge is now reviewing.

36. This Court granted a subpoena to Plaintiff to obtain a recording of the Defendants' behavior on facts presented as MEAB evidence from MDES, Legal Department due to Plaintiff by Friday, November 5, 2021, by 5:00 p.m. MDES mailed the Court ordered recording on Monday, November 8, 2021, the same day, Plaintiff received email from MEAB on not being re-instated for employment in the State of Mississippi. State agencies in Mississippi appear to ignore this Court, other laws and rules in place for state employees. There seems to be no urgency with processes, court ordered or not. There is no urgency with the Plaintiff's livelihood either.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Employment Discrimination (Wrongfully Terminated) in Violation of Title VII of the Civil Rights Act of 1964, as amended.

36. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 21 through 22.

37. Title VII prohibits employment practices that discriminate against persons on the basis of their race in the state of Mississippi.

38. Violations by Defendant are prohibited under state and federal laws for retaliation against an employee for filing a complaint at the state level in the state of Mississippi.

39. Equal Employment Opportunity Commission (EEOC) prohibits the Defendant from retaliating against an employee for filing a complaint at the federal level in the state of

Mississippi. Plaintiff endured retaliation from Defendant (agents or employees) to include: firing, denied promotions, deception and Defendants created a hostile work environment.

## SECOND CLAIM FOR RELIEF

Employment Discrimination (Blocked/banned from state employment per termination letter, harassed) in Violation of Title VII of the Civil Rights Act of 1964, as amended.

40. Plaintiff incorporate by reference as if fully set forth herein the allegations contained in paragraphs 23 through 25.

41. Plaintiff has tried to obtain full time employment, and same salary or higher, from other state agencies since July 2021 after termination by Defendant.

42. Defendant (agents or employees) has blocked and banned the Plaintiff "from entering any agency facility" as evidenced in Plaintiffs' termination letter from the Defendant. There are 10 other state agencies in the Woolfolk Building in downtown Jackson, Mississippi. Defendants have banned Plaintiff from employment opportunities and a source of earning a living in the state of Mississippi. Again, Defendant had the power to transfer Plaintiff to resolve these issues by an inter-agency (outside agency) transfer or intra-agency (within agency) transfer. Due to the Defendant's subjective and discriminatory behavior, intimidation, deception and unethical and deceptive business practices, Plaintiff was wrongfully terminated.

## THIRD CLAIM FOR RELIEF

Employment Discrimination (Denied re-instatement, inter-agency or intra-agency transfers) in Violation of Title VII of the Civil Rights Act of 1964, as amended.

43. Plaintiff incorporate by reference as if fully set forth herein the allegations contained in paragraphs 26 through 33.

44. Defendant had the authority and power to execute an inter-agency transfer and transfer the Plaintiff in another agency. Defendant used close personal relationships/associations with

MEAB state employees and chose not to transfer Plaintiff within the agency, or to another agency. The Defendant showed no mercy to Plaintiff to try and rectify any personnel issues.

## **FOURTH CLAIM FOR RELIEF**

Employment Discrimination (Denied unemployment insurance after termination) in Violation of Title VII of the Civil Rights Act of 1964, as amended.

45. Plaintiff incorporate by reference as if fully set forth herein the allegations contained in paragraphs 34 through 36.

46. Plaintiff has requested the Hinds County Circuit Clerk to release unemployment benefits. If the Circuit Court does not release unemployment benefits, then Plaintiff asks this Court to command Defendant and MDES to release unemployment benefits to Plaintiff.

## **DECLARATORY RELIEF ALLEGATIONS**

47. A present and actual controversy exits between Plaintiff and Defendant concerning rights and respective duties. Plaintiff contends the Defendant violated rights under the Title VII, Civil Rights Act of 1964. Plaintiff believe and thereon allege the Defendant denies the allegations. Declaratory relief is therefore necessary and appropriate for the bold and overt racism.

48. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## **INJUNCTIVE RELIEF ALLEGATIONS**

49. No plain, adequate, or complete remedy at law is available to the Plaintiff to restore the wrongs addressed herein.

50. If this Court does not grant the injunctive relief sought herein, the Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful and unethical;

2. For reinstatement (Throughout this entire process, only the Plaintiff has gone without state government full-time income, unemployment benefits to survive, or contributing to Plaintiff's retirement plan for the past seven plus months);

3. For lost wages and all other compensations denied or lost to Plaintiff by reason of Defendants' unlawful and deceptive actions, in an amount of not less than $500,000 to 1,000,000;

4. For compensatory damages for Plaintiffs' emotional pain and suffering, stress, and mental anguish, amount included in #3 above;

5. For punitive damages amount included in #3 above; and

6. For interest on lost wages, compensation, and damages, including adjustment for inflation, amount included in #3 above;

7. For reasonable court costs and fees and mailings/postage fees, amounts included in #3 above; and

8. For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 18th day of February, 2022.

STEPHANIA COLEMAN, PRO SE, Plaintiff

*Stephania Coleman*
127 Delmar Street
Jackson, MS 39213
Telephone: (512) 803-5344
Email: colesd323@yahoo.com

## CERTIFICATE OF SERVICE

I, Stephania Coleman, Pro Se, Plaintiff, do hereby certify that I have filed the foregoing document with the Clerk of the Court by hand delivery and by certified mail return receipt requested to:

>LYNN FITCH, ATTORNEY GENERAL
>Bethany B. Johnson, Attorney for Defendants
>Special Assistant Attorney General
>P. O. Box 220
>Jackson, MS 39205-0220
>
>LYNN FITCH, ATTORNEY GENERAL
>Morgan A. Middleton, Attorney for Defendants
>Special Assistant Attorney General
>P. O. Box 220
>Jackson, MS 39205-0220

This the 18th day of February, 2022.

/s/ Stephania Coleman
Stephania Coleman